IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>DREXTEL AMY, JAMES BRINGLEY, OLGA V. LAKES-BATTLE, ERIC RADER, THURMAN SMITH, AND THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SHOREBANK,<br><br>    Defendants. | Case No. _____ |

## ST. PAUL MERCURY INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff St. Paul Mercury Insurance Company ("Travelers"), for its Complaint against Defendants Drextel Amy, James Bringley, Olga V. Lakes-Battle, Eric Rader, and Thurman Smith (collectively, the "Officer Defendants") and the Federal Deposit Insurance Corporation (the "FDIC") as Receiver for ShoreBank (or the "Bank"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action by Travelers concerning a management liability policy (the "Policy") it issued to ShoreBank. The Officer Defendants are former officers of ShoreBank. On August 20, 2010, the Illinois Department of Financial and Professional Regulation ("IDFPR") closed ShoreBank and appointed the FDIC as receiver. Three years later, on August 16, 2013, the FDIC filed a lawsuit against the Officer Defendants, styled *Federal Deposit Insurance Corporation as Receiver for ShoreBank v. Drextel Amy, et al.*, Case No. 1:13-cv-05888 (N.D.

Ill.) (the "ShoreBank Action"), alleging that they breached duties of care owed to ShoreBank in connection with their approval of loans issued by the Bank. The Officer Defendants have tendered the ShoreBank Action to Travelers and have requested coverage in connection therewith. By way of this action, Travelers seeks a declaration of the parties' respective rights and obligations under the Policy with respect to the ShoreBank Action.

## PARTIES

2. Plaintiff Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

3. Upon information and belief, Defendant Drextel Amy previously served as a Senior Vice President, President of the Detroit region, and as a member of the Business Banking Loan Committee ("BBLC") of ShoreBank.

4. Upon information and belief, Defendant James Bringley previously served as a Senior Vice President, Head of Multi-Family Real Estate, and as Chairman of the Multi-Family Real Estate Committee ("MFREC") of ShoreBank.

5. Upon information and belief, Defendant Olga V. Lakes-Battle previously served as a Senior Vice President, Director of Commercial and Industrial Lending, and as a member of the BBLC of ShoreBank.

6. Upon information and belief, Defendant Eric Rader previously served as a Vice President of the Cleveland region and as a member of the BBLC of ShoreBank.

7. Upon information and belief, Defendant Thurman Smith previously served as a Senior Vice President, Chief Lending Officer, Chief Credit Officer, and Chairman of the BBLC of ShoreBank.

8.     Defendant FDIC is a corporation organized and existing under the laws of the United States of America, with its principal place of business in Washington, D.C. *See* 12 U.S.C. § 1819. On information and belief, ShoreBank was a state-chartered, FDIC-insured bank headquartered in Chicago, Illinois. On August 20, 2010, ShoreBank was closed by the IDFPR, and the FDIC was appointed as receiver for the Bank. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC thereupon succeeded to all rights, titles, powers, and privileges of ShoreBank. This action is brought against the FDIC in its capacity as the Bank's receiver.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 12 U.S.C. § 1819(b)(2)(a) and 28 U.S.C. § 1331 because all suits to which the FDIC is a party are deemed to arise under the laws of the United States. Additionally, although Travelers is under no obligation to do so, Travelers presented a proof of claim to the FDIC under its 12 U.S.C. § 1821(d) administrative claims process. On or about December 17, 2013, Travelers presented its proof of claim requesting the FDIC's determination and agreement that the Policy does not afford coverage for the ShoreBank Action. The FDIC failed to either allow or disallow Travelers' claim during the 180-day administrative review period provided under 12 U.S.C. § 1821(d)(5)(A)(i). This complaint is filed within 60 days of the expiration of the administrative review period in accordance with 12 U.S.C. § 1821(d)(6)(A).

10.    Venue is proper in the Northern District of Illinois (and its Eastern Division) pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District, including the filing of the ShoreBank Action.

11.     Travelers brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties regarding the coverage afforded under the Policy for the ShoreBank Action.

## FACTUAL ALLEGATIONS

### The Policy

12.     Travelers issued SelectOne for Community Banks Policy No. EC01201770 to ShoreBank's holding company (the aforementioned "Policy").  A true and correct copy of the Policy is attached as Exhibit A.

13.     The Policy was effective for the claims-made Policy Period[1] from November 1, 2008 to November 1, 2009, when the Policy was non-renewed.  (Ex. A, Policy, Declarations, Policy Period).  Upon non-renewal, a 60-day Automatic Discovery Period was activated, which ran from November 1, 2009 to December 31, 2009.  (*Id.*, General Terms, Conditions and Limitations ("GTC&L"), Extensions).

14.     The Policy's Management Liability Insuring Agreement includes Directors and Officers Individual Coverage ("D&O Coverage"), which provides:

> The Insurer shall pay on behalf of the Insured Persons Loss for which the Insured Persons are not indemnified by the Company and for which the Insured Persons become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period [or] the Automatic Discovery Period . . . , for a Management Practices Act taking place before or during the Policy Period.

(*Id.*, Management Liability Insuring Agreement ("MLIA"), D&O Coverage).

15.     The Policy's definition of an Insured includes Insured Persons which, in turn, includes Directors or Officers.  (*Id.*, GTC&L, Definitions).

---

[1] Capitalized terms are defined in the Policy.

- 4 -

16. A Director or Officer means "any natural person who was, now is or shall be a duly elected or appointed director, officer, member of the board of managers, or management committee of any Company . . . ." (*Id.*).

17. Company is defined to include ShoreBank. (*Id.*, GTC&L, Definitions; *id.*, Endorsement No. PV063 Ed. 10-02).

18. The Policy's definition of a Claim includes "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading." (*Id.*, GTC&L, Definitions).

19. A Management Practices Act is defined, in pertinent part, as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any Insured Person in their capacity as such . . . ." (*Id.*).

20. The D&O Coverage is subject to a $12 million Limit of Liability for all Loss on account of all Claims first made during the same Policy Year. (*Id.*, Declarations, Limits of Liability). The D&O Coverage also provides an additional $10 million in excess coverage for "Loss for which the Directors or Officers are not indemnified by the Company and which the Directors or Officers become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period [or] the Automatic Discovery Period . . . ." (*Id.*, Endorsement No. MEL3304 Ed. 7-05).

21. Defense Costs are part of, and not in addition to, the Limit of Liability under any Insuring Agreement and, therefore, reduce and may exhaust such limits. (*Id.*, GTC&L, Limits of Liability, Retentions and Coinsurance).

22. The Policy provides that it is the duty of the Insureds and not the duty of Travelers to select counsel and defend any Claim covered under the D&O Coverage. (*Id.*,

Declarations, Duty to Defend; *id.*, GTC&L, Defense and Settlement; *id.*, MLIA, Duty to Defend Provision).

23. The Policy further provides that "[Travelers] shall advance, on behalf of the Insureds, Defense Costs which the Insureds have incurred in connection with Claims made against them, before the disposition of such Claims . . . ." (*Id.*, GTC&L, Defense and Settlement).

## The ShoreBank Action

24. On August 16, 2013, the FDIC, in its capacity as receiver for ShoreBank, filed its complaint (the "Complaint") against the Officer Defendants in the ShoreBank Action. A true and correct copy of the Complaint is attached as Exhibit B.

25. The FDIC alleges that, "[p]ursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC succeeded to all rights, titles, powers, and privileges of the Bank and the Bank's shareholders, account-holders, and depositors, including, but not limited to, the Bank's claims against the Bank's former officers as set forth herein." (Ex. B, Compl. ¶ 5).

26. In the ShoreBank Action, "[t]he FDIC seeks to recover more than $73 million in losses suffered because the Defendants – five of the Bank's former officers – acted negligently and grossly negligently and breached their fiduciary duties by disregarding the Bank's loan policy, underwriting guidelines and prudent lending practices in connection with 20 acquisition, development, and construction ("ADC") loans, 6 commercial loans, and 2 commercial real estate ("CRE") loans approved between December 2005 and June 2009 (collectively, the "Target Loans")." (*Id.*, ¶ 1).

27. The Complaint alleges that the 28 Target Loans totaled approximately $95.78 million, that the borrowers defaulted on each of the Target Loans, and that the Officer

Defendants' wrongdoing in approving the loans resulted in losses to the Bank of at least $73 million, identified as follows:

|  | **Borrower** | **Loan Amount $** | **Alleged Loss $** |
|---|---|---|---|
| 1. | Borrower A | $660,000 | $186,000 |
| 2. | Borrower A | $560,000 | $232,000 |
| 3. | Borrower A | $100,000 | $97,000 |
| 4. | Borrower A | $100,000 | $97,000 |
| 5. | Borrower A | $100,000 | $99,000 |
| 6. | Cornell Ventures & Borrower B | $4.0 million | $2.407 million |
| 7. | LOACQ, LLC | $13.5 million | $20.7 million |
| 8. | LOACQ, LLC | $3 million | " |
| 9. | LOACQ, LLC | $10.2 million | " |
| 10. | Borrowers C & D | $1.835 million | $884,000 |
| 11. | Borrower E | $436,100 | $475,000 |
| 12. | Borrower E | $50,000 | " |
| 13. | Borrower E | $750,000 | $555,000 |
| 14. | Borrower E | $438,000 | $425,000 |
| 15. | Borrower F | $1.12 million | $831,000 |
| 16. | Borrowers G, H & I | $11 million | $6.61 million |
| 17. | Borrowers J & K | $2.318 million | $2.099 million |
| 18. | Marshall Blvd. Partners | $8.4 million | $4.58 million |
| 19. | Borrower B | $700,000 | $628,000 |
| 20. | Affordable Housing Coalition & Borrowers L, M & N | $410,000 | $400,000 |
| 21. | English Village Lofts | $450,000 | $450,000 |
| 22. | Family & Faith Christian Church | $1.65 million | $887,000 |
| 23. | Bayview Apartments, LLC | $3.5 million | $3.711 million |
| 24. | Cattleman's Inc. | $3.27 million | $3.032 million |
| 25. | St. Regis Detroit Partners | $8.68 million | $7.112 million |
| 26. | MCP Development LLC | $14 million | $12.423 million |
| 27. | Urban Innovation Group, Inc. | $3.901 million | $3.901 million |
| 28. | Chicago Christian Industrial League | $650,000 | $646,000 |
|  | **TOTAL** | **$95,778,100** | **$73,467,000** |

(*Id.*, ¶¶ 27, 31, 35–37, 41–43, 48–50, 55–57, 62–64, 71–73, 79–81, 85–86, 88, 94–96, 100–102, 106–108, 113–115, 121–23, 128–30, 136–38, 143–45, 150–52, 158–60, 165–67, 172–74, 179–82, 187–89, 193–95, 198, 201–03, 208–09).

28. The Complaint alleges that 20 of the Target Loans were approved by Mr. Bringley as Chairman of the MFREC, and that the Bank suffered losses in excess of $41 million in connection with those loans. (*Id.*, ¶¶ 29–151).

29. The Complaint alleges that the remaining 8 Target Loans were approved by Ms. Lakes-Battle, Mr. Amy, Mr. Rader, and/or Mr. Smith as members of the BBLC, and that the Bank suffered losses in excess of $32 million in connection with those particular loans. (*Id.*, ¶¶ 152–209).

30. The Complaint sets forth alternative counts for negligence (Count I), breach of fiduciary duty (Count II), and gross negligence (Count III) against the Officer Defendants in connection with their approval of the 28 Target Loans. (*Id.*, ¶¶ 210–225).

31. For each count, the FDIC alleges that the Officer Defendants breached their duties to the Bank by voting to approve the 28 Target Loans, "in violation of the Bank's loan policy and prudent, safe, and sound lending practices," and by:

   a. Failing to obtain borrower and guarantor financial information;

   b. Relying on outdated, unverified, and inadequate financial information for borrowers and guarantors;

   c. Failing to perform and/or ensure that global cash flow analyses were performed prior to loan approval;

   d. Failing to properly assess the repayment ability of borrowers and/or guarantors;

   e. Failing to ensure that loans were secured by sufficient collateral;

   f. Extending credit in excess of LTV [loan-to-value] ratio limits;

   g. Approving loans in excess of individual approval authority and without proper committee approval;

   h. Failing to obtain appraisals prior to loan origination;

      i.      Approving loans without adequate documentation; and

      j.      Permitting DSCRs [debt service coverage ratios] below minimum requirements.

(*Id.* at 212, 217, 224).

32.    On information and belief, the Officer Defendants deny any wrongdoing or liability in the ShoreBank Action.

33.    In response to the ShoreBank Action, the Officer Defendants have demanded coverage from Travelers, and Travelers is advancing Defense Costs to the Officer Defendants under the Policy subject to a full reservation of rights.

## COUNT I

**Declaratory Judgment**
**The Policy Does Not Afford Coverage Because the ShoreBank Action Is Not a Claim First Made During the Policy Period or the Automatic Discovery Period**

34.    Travelers repeats and incorporates by reference the allegations in Paragraphs 1 through 33 above, as if fully set forth herein.

35.    Subject to its terms, conditions, and exclusions, the Policy only affords coverage for Claims that are first made against the Insured Persons during the Policy Period or the Automatic Discovery Period. (Policy, MLIA, D&O Coverage).

36.    The Policy's definition of a Claim includes a civil proceeding commenced by the filing of a complaint against Insureds. (*Id.*, GTC&L, Definitions).

37.    The ShoreBank Action was filed on August 16, 2013, after the expiration of the Policy Period (November 1, 2009) and the 60-day Automatic Discovery Period (December 31, 2009) for the Policy.

38. The Policy contains a Notice provision, which requires treatment of certain post-Policy Period and post-Automatic Discovery Period Claims as timely if its conditions are met. The Notice provision provides, in pertinent part, as follows:

> If during the Policy Period [or] the Automatic Discovery Period . . . the Insureds become aware of circumstances which could give rise to a Claim for a Wrongful Act taking place before or during the Policy Period and give written notice of such circumstances and the other information referenced below to the Insurer during the Policy Period [or] the Automatic Discovery Period . . . , then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Year [or] the Automatic Discovery Period . . . in which such notice of such circumstance and such other information was first given to the Insurer.
>
> The Insureds shall, as a condition precedent to exercising their rights under this Policy: (a) include within any notice of Claim or circumstance a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants and Insureds involved, and the manner in which the Insureds first became aware of the Claim or circumstances; and (b) give to the Insurer such other information and cooperation as the Insurer may reasonably request.

(*Id.*, GTC&L, Notice).

39. On October 30, 2009, the Bank's holding company, the ShoreBank Corporation, sent a letter (the "October 2009 Letter") to Travelers purporting to provide notice of "certain potential claims or circumstances that may give rise to claims under the [Policy]." No other letters purporting to be notices of circumstances were sent by any Insured prior to the expiration of the Policy Period and the Automatic Discovery Period.

40. The October 2009 Letter did not include the specific information required by the Policy's Notice provision.

41. The ShoreBank Action also does not arise from the circumstances reported in the October 2009 Letter.

42. Accordingly, the ShoreBank Action does not constitute a Claim first made during the Policy Period or the Automatic Discovery Period for the Policy.

43. Travelers therefore is entitled to a declaratory judgment that there is no coverage under the Policy for the ShoreBank Action because it is not a Claim first made during the Policy Period or the Automatic Discovery Period for the Policy.

## COUNT II

### Declaratory Judgment
### The Policy's Insured versus Insured Exclusion Bars Coverage for the ShoreBank Action

44. Travelers repeats and incorporates by reference the allegations in Paragraphs 1 through 43 above, as if fully set forth herein.

45. The Policy provides:

The Insurer shall not be liable for Loss [including Defense Costs] on account of any Claim made against any Insured:

\* \* \*

4. brought or maintained by or on behalf of any Insured or Company [including ShoreBank] in any capacity, except:

    (a) a Claim that is a derivative action brought or maintained on behalf of the Company by one or more persons who are not Directors or Officers and who bring and maintain such Claim without the solicitation, assistance or active participation of any Director or Officer;

    (b) a Claim brought or maintained by a natural person who was a Director or Officer, but who has not served as a Director or Officer for at least six-years preceding the date the Claim is first made, and who brings and maintains the Claim without the solicitation, assistance or active participation of any Director or Officer who is serving as a Director or Officer or was serving as a Director or Officer within such six-year period;

    (c) a Claim brought or maintained by or on behalf of any Insured Person for an Employment Practices Act;

      (d)      a Claim brought or maintained by any Insured Person for contribution or indemnity, if the Claim results from another Claim covered under this Policy;

      (e)      only with respect to any Fiduciary Liability Insuring Agreement made part of this Policy, a Claim brought or maintained by or on behalf of any Employee of the Company for any Fiduciary Act;

      (f)      a Claim brought by an Insured Person solely in his or her capacity as a customer of the Company for a Trust Act or a Professional Services Act, provided that such Claim is instigated totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any other Insured; or

      (g)      a Claim brought or maintained in a jurisdiction outside of the United States of America, Canada or Australia by an Insured Person of a Company incorporated or chartered in a jurisdiction outside of the United States of America, Canada or Australia.

(Policy, GTC&L, Exclusions Applicable to All Insuring Agreements and to All Loss, Exclusion 4) (the "IvI Exclusion").

46.     The Policy's IvI Exclusion bars coverage for any Claim "brought or maintained by or on behalf of any Insured," including ShoreBank. (*Id.*).

47.     The FDIC brings the ShoreBank Action as ShoreBank's receiver, alleging that the Officer Defendants breached duties owed to ShoreBank prior to its closure and caused damage to ShoreBank.

48.     The ShoreBank Action is a Claim brought or maintained by or on behalf of ShoreBank and none of the exceptions to the IvI Exclusion apply.

49.     Accordingly, the Policy's IvI Exclusion bars coverage for the ShoreBank Action.

50.     Travelers therefore is entitled to a declaratory judgment that the IvI Exclusion precludes coverage under the Policy for the ShoreBank Action.

## COUNT III

**Declaratory Judgment
The Unrepaid Loan Carve-Out Bars Coverage for the Amount
the FDIC Seeks to Recover in the ShoreBank Action**

51. Travelers repeats and incorporates by reference the allegations in Paragraphs 1 through 50 above, as if fully set forth herein.

52. The Policy only provides coverage for Loss, as that term is defined in the Policy.

53. Loss is defined to mean "the amount which the Insureds become legally obligated to pay on account of each Claim and for all Claims made against them during the Policy Period [or] the Automatic Discovery Period . . . for Wrongful Acts for which coverage applies, including Damages, judgments, settlements and Defense Costs." (Policy, GTC&L, Definitions).

54. Pursuant to the Policy's Unrepaid Loan Carve-Out, "Loss does not include . . . any unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower." (*Id.*). A Borrower is further defined as "any individual or entity that is not an Affiliated Person and to which the Company extends, agrees to extend, or refuses to extend, a loan, lease or extension of credit." (*Id.*).

55. Consequently, by substituting the definition of Loss into the Unrepaid Loan Carve-Out, the Unrepaid Loan Carve-Out provides that: "the amount which the Insureds become legally obligated to pay on account of each Claim . . . including Damages, judgments, settlement and Defense Costs . . . does not include any unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower."

56. The amounts for which the FDIC seeks to hold the Officer Defendants legally liable in the ShoreBank Action include unrepaid, unrecoverable or outstanding loans to ShoreBank Borrowers.

57. Accordingly, the Unrepaid Loan Carve-Out bars coverage for the amounts sought by the FDIC in the ShoreBank Action that are any unrepaid, unrecoverable or outstanding loans to ShoreBank Borrowers.

58. Travelers therefore is entitled to a declaratory judgment that the Unrepaid Loan Carve-Out precludes coverage under the Policy for the amounts sought in the ShoreBank Action that are any unrepaid, unrecoverable or outstanding loans to any Borrowers.

## COUNT IV

### Reservation of Rights

59. Travelers repeats and incorporates by reference the allegations in Paragraphs 1 through 58 above, as if fully set forth herein.

60. Travelers has reserved all of its rights under the Policy and applicable law. By seeking a declaratory judgment based on the foregoing provisions of the Policy, Travelers does not waive any potential coverage defenses pursuant to any of the Policy's terms, conditions, and exclusions. Developments in connection with this lawsuit may render additional defenses to coverage ripe for judicial determination.

## PRAYER FOR RELIEF

WHEREFORE, Travelers prays that this Court order, adjudge, and decree the following relief:

A. A judicial declaration that there is no coverage under the Policy for the ShoreBank Action because it is not a Claim first made during the Policy Period or the Automatic Discovery Period for the Policy.

B. A judicial declaration that the IvI Exclusion bars coverage under the Policy for the ShoreBank Action;

C. A judicial declaration that the Unrepaid Loan Carve-Out bars coverage under the Policy for the FDIC's claimed damages in the amount of unrepaid, unrecoverable or outstanding loans to ShoreBank Borrowers;

D. A judicial declaration of the respective rights and obligations of Travelers and the Officer Defendants under the Policy with respect to the ShoreBank Action; and

E. An Order awarding Travelers such additional relief as shall be found to be appropriate under the circumstances.

Dated: August 12, 2014 

Respectfully submitted,

/s/ Kimberly E. Rients Blair
Kimberly E. Rients Blair
WILSON ELSER MOSKOWITZ EDELMAN
  & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, IL  60603-5001
Telephone: (312) 704-0550
Facsimile: (312) 704-1522
kimberly.blair@wilsonelser.com

– and –

/s/ Thomas J. Judge
Thomas J. Judge
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, N.W., Suite 450
Washington, D.C.  20036
Telephone: (202) 778-4065
Facsimile: (202) 778-4099
tjudge@ljwllp.com

*Counsel for Plaintiff*
*St. Paul Mercury Insurance Company*